UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 5:09-CV-141-KSF

JOHN F. RUGGLES, JR., INC. d/b/a
RUGGLES SIGN COMPANY, INC.                                                    PLAINTIFF


vs.                                      **OPINION AND ORDER**


VENTEX TECHNOLOGY, INC., et al.                                            DEFENDANTS

* * * * * * * *


This matter is before the Court on the motion of Ventex Technology, Inc. ("Ventex") for

summary judgment against John F. Ruggles, Jr., Inc. ("Ruggles") [DE 61] and Ruggles' motion for

summary judgment against Ventex [DE 64]. Both motions encompass the same arguments. For

the reasons discussed below, Ventex's motion will be granted, and Ruggles' motion will be denied.

I.       BACKGROUND

Much of the background of this case was set out in the Court's Opinion and Order of April

11, 2011 [DE 89] regarding the admissibility of expert testimony. For ease of reference, some of

the basic facts are repeated here.

John F. Ruggles, Jr., Inc. ("Ruggles") is in the business of constructing, installing, and

servicing illuminated signs for sale to commercial businesses. [Amended Complaint ¶ 5]. John

Ruggles started the business in 1946. [Cambron Depo. p. 131]. Many of Ruggles' signs are for

interior locations, such as shopping malls. *Id.* at 12-13. One of Ruggles' customers, Limited

Brands, owns the national "Victoria's Secret" retail stores. *Id.* pp. 27-28. In 2005, Limited Brands

approached Ruggles to construct and install neon signs in Victoria's Secret stores for a nationwide

advertising campaign. [Padgett Depo. p. 190]. Limited Brands produced artwork for the

appearance of the signs, which were to look like pink scripted words or phrases, such as "Body by

Victoria," "Angels," "I Love Victoria's," and the like. [DE 64-2]. Ruggles constructed most of the

signs using power sources ("transformers") manufactured by Ventex after discussing the project signs with John Boyd of Ventex. [Cambron Depo. pp. 28-29, 38-41]. Ventex does not make direct sales to ultimate users like Ruggles; it requires purchases to go through its distributors. [Padgett Depo., p. 196]. The Ventex transformers involved here were purchased from two Ventex distributors, Neon Engineering, Inc. ("Neon") and Cincinnati Sign Supplies, Inc. ("CSS"). Initially, Ruggles used some Ventex black transformers and black transformers covered in white vinyl, but then Ventex specially manufactured for Ruggles 1,000 transformers with a solid white case. [Padgett Depo., pp. 55-56]. The first of the solid white transformers were shipped to Ruggles in April 2007. [DE 61-7, CSS 5]. The Victoria's Secret campaign was rolled out in 2007, and no problems were experienced with signs installed prior to April 2007. *Id.* at 40-41.

By July 2007, Ruggles decided they had real problems with the Victoria's Secret signs because many were dimming or darkening in certain areas. [Cambron Depo., pp. 41, 84]. Tim Cambron, one of the owners of Ruggles, described it as "mass failures from Maine to California" and his "industry's worst nightmare." *Id. at 77.* Brent Lee of Lee Neon Signs, Inc., who processed the neon glass used in the signs, worked with Ruggles to identify the problem, along with Ventex and other suppliers who produced parts for the signs. [Padgett Depo. pp. 79-80; DE 61-1, p. 7]. Ruggles changed every possible variable in the signs in an attempt to locate the problem and found that when the Ventex transformer was replaced, that "made [the] problem go away." [Padgett Depo, pp. 79-81]. Lee disavowed Ventex's conclusion that the problem was in the processing of the neon glass and conducted independent experimentation with all the variables. He also found that the problem was solved by replacing the Ventex transformers. [DE 51-3]. All signs with the replaced transformers continue to operate properly. Ruggles sought the opinion of an outside consultant, Bud Francis, who analyzed wave forms of several transformers and concluded in March 2008 that the Ventex transformers caused the darkening in the Victoria's Secret signs. [DE 51-1].

Ventex conducted its own in-house testing and concluded the problem was not the transformers, but rather the darkening was caused by the electrodes incorporated into the signs or irregularities in the processing of neon gas. [Parker Memo., DE 61-12, Ex. K]. Ventex modified some of its transformers, however, and shipped 450 units to Ruggles, at no charge, as a "gesture of support to ... a good customer over the years." [DE 61-13, Ex. L]. The signs lit properly with the modified transformers. Ventex offered to provide Ruggles with a discount on future modified units, but Ruggles declined to purchase any additional Ventex transformers. [DE 61-14, Ex. M].

In this action against Ventex and its distributors, Ruggles alleges detrimental reliance on representations by Ventex (Count I), failure to warn (Count III), five counts of breach of various warranties, and an allegation that a disclaimer of warranties violates the Uniform Commercial Code ("UCC") and other applicable law (Count VIII). [Amended Complaint]. Ruggles argues in its motion for summary judgment [DE 64] and reply [DE 87] that Ventex made three express warranties to Ruggles. First, Ventex's User's Guide warranted that all products are "free from defects in material and workmanship" and further that the goods "shall operate in accordance with specifications specified or assented to in writing by Ventex at the time of sale under normal, proper use and operating conditions." [DE 87, pp. 2-3]. Second, it claims that Ventex's President, John Boyd, warranted that the use of the transformers in the Victoria's Secret signs was an "ideal application" for the product. *Id.* at 3. Third, Ventex's advertising warranted that its products were: "The World's Leading Electronic Power Supplies for Neon Lighting" and "Technology so advanced, no other neon power supply or transformer even comes close in performance and reliability to Ventex Generation III units." *Id.*

Ruggles further argues that Ventex made at least two specific implied warranties to Ruggles. Boyd told Ruggles the transformers were "ideal" for use in the Victoria's Secret project, and the advertising quoted above "could be construed as an implied warranty." *Id.* In addition, Ruggles argues that "Ventex knew precisely the way that Ruggles intended to use the transformers

to power the illumination of its signs." He argues the transformers should have been suitable for the uses for which they were marketed. Ruggles also argues that Ventex's disclaimer of warranties "creates an unconscionable contract" because it leaves a purchaser like Ruggles with "basically no remedy at all." *Id.*

Ruggles contends that CSS and Neon are agents for Ventex, such that Ruggles is in privity of contract with Ventex, and that Ruggles detrimentally relied on the representations of Ventex. [DE 64, pp. 21, 26]. Ruggles also claims it is entitled to recover under a theory of promissory estoppel. Ruggles demands incidental and consequential damages from Ventex. *Id.* at 22.

Ventex's summary judgment motion [DE 61] and response to Ruggles' motion [DE 76] argue that the Ventex express written warranty and disclaimer preclude Ruggles' claims. [DE 61, pp. 10-14]. Ventex also argues Ruggles cannot prevail on a breach of express warranty claim for two reasons – Ruggles is not in privity with Ventex, and there is insufficient evidence of a defect.[1] [DE 61-1, pp. 19-35]. Similarly, it argues that Ruggles could not prevail on any other warranty claim against Ventex because there was no privity between them. Alternatively, it argues that any remedy for Ruggles is limited to recovery of the cost of the power supplies pursuant to its written express warranty and that there is no liability for consequential or incidental damages.

With respect to Ruggles' claim of detrimental reliance, Ventex contends it is duplicative of the warranty claims. Ventex also argues that promissory estoppel cannot serve as the basis for a claim if it involves the same performance contemplated under a written contract. [DE 61-1, pp. 14-17]. Ventex further argues that Ruggles' "failure to warn" claim is merely an attempt to restate the breach of warranty claim so as to avoid the requirement of privity and other contractual provisions. *Id.* at 17-19.

---

[1] With its summary judgment motion, Ventex filed a motion to exclude the proposed expert testimony of Ruggles' witnesses, Ralph Francis and Brent Lee. The motion to exclude expert opinion testimony by Lee was subsequently granted, but it was denied as to Francis. [DE 89].

## II.    ANALYSIS

### A.    Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    Product Liability Claim

Count III of Ruggles' Amended Complaint alleges "failure to warn." The crux of the claim is that Ventex "failed to effectively warn Ruggles that the transformers manufactured by Ventex could not perform properly in signs sold by Ruggles" and that "Ruggles will continue to suffer damages" as a result of such failure. [DE 35, ¶¶ 35, 40]. Ventex argues this is simply a restatement of Ruggles' breach of warranty claims under another name in an attempt to avoid the requirement of privity. The Court agrees with that argument.

Moreover, a claim for "Failure to Warn" is a product liability action. *See Snawder v. Cohen*, 749 F. Supp. 1473, 1476 (W.D. Ky. 1990) ("It is commonly said that a product can be defective in the kind of way that makes it unreasonably dangerous by failing to warn or failing adequately to warn about a risk or hazard related to the way a product is designed."). In response to arguments that a product liability claim would fail under the "economic loss" doctrine and that Ruggles has not

presented evidence of a defect and alternative design, Ruggles says he "has not asserted a

Product Liability Claim against Ventex or Neon and, therefore, the Products Liability Act does not

apply. [DE 71, p. 3]. Accordingly, Ventex is entitled to summary judgment on Count III of the

Complaint regarding a failure to warn.

### C. Warranty Claims

#### 1. Ventex's Express Warranty and Disclaimer

The Ventex express warranty provides:

> Ventex Technology, Inc. ("Ventex") warrants products purchased from Ventex shall be free from defects in material and workmanship and such products shall operate in accordance with specifications specified or assented to in writing by Ventex, at the time of sale, under normal, proper use and operating conditions. ... If a product is defective, it will be repaired or replaced, at the sole discretion of Ventex, if returned to Ventex, transportation prepaid. ...

> THE AFOREMENTIONED IS IN LIEU OF ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR ANY PARTICULAR PURPOSE. IN NO EVENT SHALL VENTEX BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, INDIRECT OR SPECIAL DAMAGES OR LIABILITY, TRANSPORTATION, INSTALLATION OR SUBSTITUTION COSTS, DELAYS, OR FOR ANY OTHER DAMAGES, COSTS, OR EXPENSES INCURRED, IRRESPECTIVE OF HOW THEY OCCUR.

[DE 61-10]. This warranty was printed on the one-page User's Guide that was shipped with each

individual power supply. [Padgett Depo., pp. 179-80].

Ventex argues that its express written warranty and disclaimer control all other express or

implied warranties and narrowly limit Ruggles' remedies. [DE 61-1, p. 10]. It argues that Ruggles

can only make a claim under the express warranty, which requires proof of a defect in material and

workmanship. The difficulty with this argument is that the written warranty, by its terms, only

applies to "products purchased from Ventex." None of the products at issue in this case were

purchased by Ruggles from Ventex. Indeed, Ventex argues in another portion of its motion that

Ruggles cannot state a claim under the written warranty because it "is not in contractual privity with

Ventex because it did not purchase the power supplies directly from Ventex, but rather from two

of Ventex's distributors." *Id.* at 19.  This Court finds that Ventex's written warranty and disclaimer have no applicability to Ruggles since it purchased nothing from Ventex.

Because the written warranty and disclaimer do not apply to Ruggles, it is not necessary to address Ruggles' arguments that the disclaimer is unconscionable because it leaves him "basically no remedy at all." [DE 87, pp. 3-5].  Moreover, the current law in Kentucky is that "a party may exclude or disclaim any implied warranty of merchantability or any implied warranty of fitness by including the appropriate language in the contract."  *Gooch v. Du Pont de Nemours & Co.,* 40 F. Supp. 2d 863, 868 (W.D. Ky. 1999); KRS 355-2.316(2).  Remedies may also be limited pursuant to KRS 355.2-316(4).

### 2.     Other Warranty Claims

The parties do not dispute that the sale of transformers was a sale of goods governed by the UCC.  The dispute is about who was the "seller" and how the UCC provisions apply under the facts.  The UCC contemplates various warranties by the seller of goods.  Ruggles insists he has a warranty claim against the manufacturer of the power sources (Ventex), but Ventex did not sell the goods to him.  The "sellers" were CSS and Neon.  Thus, the only warranty claims authorized by the UCC for Ruggles would be against CSS and Neon.

Kentucky law is clear that a threshold requirement for a breach of warranty claim is privity between the parties.  In *Compex International Co., Ltd. v. Taylor*, 209 S.W.3d 462 (Ky. 2006), the court said: "a seller's warranty protections are *only* afforded to one with whom there is privity of contract, or, to use the terms of the statute, a 'seller's' warranty protections are *only* afforded to 'his buyer.'" *Id.* at 465.  *See also Brown Sprinkler Corp. v. Plumbers Supply Co.*, 265 S.W.3d 237, 240 (Ky. Ct. App. 2007) ('[P]rivity of contract between the parties is a prerequisite to a claim for breach of warranty.");  *Childress v. Interstate Battery Systems of America, Inc.*, No. 1:09-cv-54, 2010 WL 600023 at *5 (W.D. Ky. 2010) ("Based on Childress's acknowledgment that he is not in privity with JCBG, ... his claim for breach of warranty ... fails as a matter of law.");  *Munn v. Pfizer Hosp.*

*Products Group, Inc.*, 750 F. Supp. 244, 248 (W.D. Ky. 1990) (Breach of warranty claim against manufacturer fails when product purchased from distributor.).

In *Compex*, the court denied a breach of warranty claim against the manufacturer (Compex) when the product had been purchased from a distributor (K-Mart). "If liability is based on sale of the product, it can be extended beyond those persons in privity of contract only by some provision of the U.C.C. as adopted in Kentucky." *Compex*, 209 S.W.3d at 464, quoting *Williams v. Fulmer*, 695 S.W.2d 411, 413 (Ky. 1985). Likewise, in *Brown*, the court affirmed summary judgment in favor of the manufacturer on a breach of warranty claim when the product was purchased from a distributor.

Ruggles relies on *Arco Metals Corp. v. J.W. Imports Company, Inc.*, 560 F. Supp. 125 (N.D. Ill. 1982), for the proposition that a direct relationship with a manufacturer may avoid a privity requirement. *Arco*, however, is based on Illinois law. The decision specifically states: "Illinois law does not always require privity of contract between the user and the manufacturer of the product, at least insofar as the enforceability of implied warranties of merchantability and fitness for a particular purpose are concerned." *Id.* at 128. Kentucky law is obviously in disagreement with Illinois law on the requirement of privity.

Ruggles argues that Ventex construes the doctrine of privity too narrowly and that the Court should adopt "a more nuanced approach to determining the question of whether parties are in privity." [DE 87, pp. 11-12]. It contends that the "extensive relationship" between Ventex and Ruggles satisfies the requirement of privity. [DE 87, p. 12]. In support, Ruggles relies on *Frantz v. Blue Grass Hams*, 520 S.W.2d 313 (Ky. Ct. App. 1974), in which Frantz was a mechanical contracting firm that supplied a quick-curing cooling system to Blue Grass Hams. *Id.* at 314-15. The system was designed and manufactured by Brock-McVey pursuant to standards provided by a meat processing expert for Blue Grass. The system repeatedly froze up and finally failed

completely.  Frantz sought to avoid a claim for breach of warranty by asserting it was not a seller under the UCC, but the Court of Appeals disagreed.  *Id.*

Ruggles claims that *Frantz* "clearly shows Kentucky courts have been willing to recognize the sufficiency of breach of warranty claims asserted against a party other than the party who sold directly to the buyer." [DE 87, p. 13].  The fatal flaw in this argument is that Frantz did, in fact, sell the cooling system directly to Blue Grass.  The court said Frantz was "a mechanical contracting firm which had supplied the equipment under an oral agreement with Blue Grass."  *Id.* at 314.  It also said: "After installation, Frantz submitted a statement to Blue Grass for the cost of the cooling system and other items it had supplied; whereupon, Blue Grass paid Frantz the amount shown on the statement."  *Id.*  at 315.  The fact the agreement was oral did not destroy privity.  There was a direct buyer/seller contract between Blue Grass and Frantz; accordingly, Blue Grass could bring a breach of warranty claim against Frantz.  The *Frantz* case provides no support for Ruggles.

Ruggles' alternative argument that Neon and CSS are agents is likewise not supported by the facts or authority.  Ruggles accurately cites some general authority on the law of agency and makes conclusory statements that Neon and CSS are agents, but provides no factual support whatsoever.  "Agency is a legal conclusion to be reached only after analyzing relevant facts. ... The burden of proving agency is on the party alleging its existence."  *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992).  Ruggles does not point to any evidence that Ventex held CSS and Neon out as its agents.  There is no evidence that Ventex exercises control over the "method, manner, and details of the agent's work."  *Nazar v. Branham*, 291 S.W.3d 599, 606-07 (Ky. 2009). The Affidavit of Lenny Diaspro shows that CSS is a non-exclusive distributor of Ventex products. Here, as in *Wright*, there is insufficient evidence for a legal conclusion of agency.

Ruggles alleged breach of warranty claims in Counts II, IV, V, Vi and VII.  Because there is no privity of contract between Ruggles and Ventex, Ventex is entitled to summary judgment on these counts.

**D.      Detrimental Reliance**

Ruggles argues detrimental reliance and promissory estoppel as alternatives to its warranty claims.  Ruggles cites the Ventex's User's Guide with its express written warranty [DE 87, pp. 2-3] in support of his claim of detrimental reliance.  As discussed above, the express written warranty has no applicability to those who do not purchase directly from Ventex.  Moreover, there is no evidence of Ruggles' reliance on this warranty.

Ventex argues that the theory of detrimental reliance is merely duplicative of the warranty claims.  Additionally, Ventex argues that promissory estoppel cannot involve the same performance contemplated under a written contract [DE 61-1, pp. 14-17].  "[E]stoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contract."  *Tractor & Farm Supply v. Ford New Holland*, 898 F. Supp. 1198, 1205 (W. D. Ky. 1995).  "Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract."  *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990) (quoting *Walker v. KFC Corp.*, 728 F.2d 1215 (9th Cir. 1984)).  While these are accurate statements of the law, they have no applicability here because there is no contract with Ventex and there are no second bites.

Kentucky relies on the *Restatement (Second) of Contracts* § 90 (1965) definition of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforce-ment of the promise.

*McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 11 (Ky. Ct. App. 1990).  *See also Davis v. Siemens Medical Solutions USA, Inc.*, 399 F. Supp.2d 785, 795 (W.D. Ky. 2005) (elements of promissory estoppel in Kentucky).

Ruggles claims that he relied on Ventex advertising that said Ventex provides:  "[t]he World's Leading Electronic Power Supplies for Neon Lighting," and that Ventex' products contain

"[t]echnology so advanced, no other neon power supply or transformer even comes close in performance and reliability to Ventex Generation III Units." [DE 64, p. 14]. The problem with these statements is that they are classic examples of mere sales "puffing." Under the UCC, "a statement purporting to be merely the seller's opinion or commendation of the goods does not create an express warranty." KRS 355.2-313(2). "A seller may puff his wares and state his opinion on their value without creating an express warranty." *Overstreet v. Norden Laboratories, Inc.*, 669 F.2d 1286, 1290 (6th Cir. 1982). Similar representations by a vehicle manufacturer that the roof was "strong, light, leakproof" and its trucks were "rock-solid" were commercial puffery and not a serious guaranty of indestructibility. *Jordan v. Piccar, Inc.,* 37 F.3d 1181 (6th Cir. 1994). Additionally, there is no evidence that Ruggles specifically relied on any of the advertising to its detriment. He simply says if the transformers had worked in the same way as Ventex' competitors, "this action would not be necessary." [DE 64-1, p. 14].

Under a promissory estoppel theory, such generalized statements should not be reasonably expected to induce action or forbearance on the part of Ruggles. Ruggles' owner and general manager are sophisticated business people with many years of experience using transformers in neon signs. They are not the typical uninformed consumers who know nothing about a product.

Ruggles said its people talked with Ventex before deciding on the Ventex transformers. [Padgett Depo., p. 196; Cambron Depo., p. 28-29]. Ruggles, however, does not identify any specific statements during these negotiations that it relied upon to its detriment. It appears the discussions focused on obtaining white casings, transformer size, energy usage, prompt delivery, and the like. *Id.* Ruggles does not argue these promises were not kept.

Ruggles claims to have relied to his detriment on statements by Ventex President, John Boyd, during a visit to Ruggles' plant in April or May 2007. According to Ruggles, Boyd said the Victoria's Secret signs were an ideal application for Ventex transformers and that Ruggles should not "change a thing." Bob Padgett clarified that Boyd's comment about not changing anything was

made in response to Ruggles' request for Boyd's opinion on the assembling of the signs, rather than a factual statement about the performance of the power supplies. [Padgett Depo., p. 182]. Ruggles does not claim there was a problem with the assembly that would have been corrected but for Boyd's statement. More importantly, there is no evidence that Ruggles reasonably relied to its detriment on any of these statements by Boyd. By the time of Boyd's visit, Ruggles had already been purchasing Ventex transformers for nearly seven months. [Cambron Depo., pp. 39-40]. The first installations of signs in Victoria's Secret stores was in November 2006. *Id.* Ruggles purchased more than 750 Ventex power supplies in 2006, before the white power supplies were ordered. [DE 64-3, VTX 12-13]. Ruggles' special order for 1,000 white transformers was initiated in November 2006 with a "Required Date" of "12/20/2006." [DE 64-3, VTX 11; DE 61-8, CSS 1]. The first white transformers were shipped on April 16, 2007. [DE 61-7, CSS 5]. Ruggles has not claimed that he made additional purchases based on Boyd's statements. Accordingly, Ruggles' detrimental reliance/promissory estoppel claims must fail.

### E.    Motion to Compel Ventex to Attend Mediation

On May 27, 2011, Ruggles moved for mandatory mediation [DE 91], but withdrew the motion when Ventex agreed to participate in the mediation scheduled for July 14, 2011. In a June 1, 2011 email at 2:14 p.m. to all counsel, Ruggles' counsel said:

> Do we agree? Each party will personally attend mediation *through a person with full negotiation and settlement authority* without need for further consultation on July 14th with Cleve Gambill. Ruggles will pay 33.33% of Mr. Gambill's $200 per hour fee. The Defendants will pay the balance. Mediation will be in Lexington. I am happy to host, but will go to Gene's office if you prefer.

[DE 100-1, emphasis added]. Counsel for Ventex responded the same day at 2:58 p.m.: "All, Ventex will participate in mediation on July 14 with Cleve Gambill and will pay 1/3 of the cost of the mediator's fee. The location is immaterial." *Id.* In its renewed motion to compel, Ruggles states: "All of those parties except Ventex appeared with representatives holding full authority to settle the case. Ventex appeared only by its counsel, sending no representative to the mediation." [DE 100].

In response, counsel for Ventex said there was no basis for any understanding that it would have a representative present, and that the Court's Scheduling Order only requires a person with full settlement authority to be present at the Pretrial Conference. He denied that Ventex had any obligation to settle the case. [DE 101].

While counsel is correct that Ventex is not obligated to settle this case, Ventex was obligated to "conduct a good faith settlement conference" no later than July 21, 2011. [DE 15]. The Scheduling Order often references obligations of "counsel," as in Paragraphs 1, 5, 6, 7, 8, and 9. By contrast, Paragraph 10 states an obligation of the "parties," not just counsel. "[T]he parties shall conduct a good faith settlement conference...." The fact the Order does not repeat in Paragraph 10 that "a representative with full settlement authority" must be present, does not authorize a party to refuse to participate.

In *Empire, Inc. v. Wal-Mart Stores, Inc.*, 188 F.R.D. 478, 481 (E. D. Ky. 1999), the court said:

> By bringing their dispute to a court for resolution, the parties have invoked the use of an expensive public resource. It is misuse of those resources for any party to refuse even to meet personally with the opposing party or its counsel to attempt to resolve their disputes prior to trial.

*Id.* at 98. In that case, the court ordered Wal-Mart to pay $5,071 in attorneys' fees and costs after its counsel unilaterally announced four days in advance that a settlement conference was cancelled and sent only counsel to appear, rather than a representative with full settlement authority.

For the future guidance of counsel, Ventex was obligated to have a representative with full settlement authority present at the settlement conference. The motion to compel is well taken; however, this decision on the merits renders further mediation moot.

III.    **CONCLUSION**

**IT IS ORDERED:**

A.      The motion of Ventex Technology, Inc. for summary judgment as to all claims by Ruggles [DE 61] is **GRANTED** and Ventex is **DISMISSED** as a party to this action.

B.      The motion of John F. Ruggles, Jr., Inc. for summary judgment on all of its claims against Ventex [DE 64] is **DENIED**.

C.      Ruggles' motion to compel mediation [DE 100] is **DENIED AS MOOT**.

This July 21, 2011.



Signed By:

*Karl S. Forester*  K S F
**United States Senior Judge**